UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

PATRICK CANNELLA,

      Petitioner,

v.                                   Case No.  4:16cv795-MW-CJK

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

Before the court is a counseled petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, attaching relevant portions of the state court record.  (Doc. 14).  Petitioner replied, attaching an additional exhibit from the state court record.  (Doc. 23).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that petitioner is not entitled to federal habeas relief.

## BACKGROUND FACTS[1] AND PROCEDURAL HISTORY

Jarrod Cooper met death in a tragic car accident on Valentine's Day, February 14, 2007.  His passenger, Jerrian Johnson, died from her injuries sixteen days later. Cooper and Johnson were engaged to be married.  Cooper was 19 years old.  Johnson was 23 and the mother of two small children.  The accident occurred after Cooper and Johnson left a church function to pick up Johnson's children at Cooper's mother's home.  Cooper was driving a Kia 4-door passenger car when he ran a stop sign and was "T-boned" by petitioner's Chevy Silverado pickup truck.  Petitioner was intoxicated and speeding.[2]  (Doc. 14, Exs. D-H (trial transcript)).[3]

Petitioner was charged in Leon County Circuit Court Case No. 2007-CF-883, with two counts of manslaughter by driving under the influence.  (Ex. A, p. 1). Petitioner went to trial on September 8-10, 2009, and the jury found him guilty of both counts as charged.  (Ex. A, p. 102 (written verdict); Ex. H, pp. 629-30 (reading

---

[1] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the prosecution.  (Doc. 14, Exs. D-H (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

[2] Petitioner's blood-alcohol level, tested from a blood sample drawn two to three hours after the accident, was .199 grams of ethyl alcohol per 100 milliliters of blood.  The legal limit was .08. Petitioner was driving 51 miles per hour in a 45-mph zone.

[3] All references to exhibits are to those provided at Doc. 14, unless otherwise noted.  Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page.

of verdict). The trial court adjudicated petitioner guilty and sentenced him to 12 years in prison on Count 1, and a consecutive term of 8 years on probation on Count 2. (Ex. A, pp. 148-56 (judgment)). The Florida First District Court of Appeal (First DCA) affirmed on May 20, 2011, per curiam and without opinion. *Cannella v. State*, 61 So. 3d 1115 (Fla. 1st DCA 2011) (Table) (copy at Ex. N). The Supreme Court of the United States denied certiorari on February 21, 2012. *Cannella v. Florida*, 565 U.S. 1195 (2012).

On February 29, 2012, petitioner, represented by counsel, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, (Ex. R, pp. 555-64), which he later amended, (Ex. O, pp. 178-87). The state circuit court conducted an evidentiary hearing and denied relief. (Ex. P, pp. 283-400 through Ex. Q, pp. 401-549 (evidentiary hearing transcript); Ex. S, pp. 550-54 (order)). The First DCA affirmed per curiam without opinion. *Cannella v. State*, 192 So. 3d 47 (Fla. 1st DCA 2016) (Table) (copy at Ex. W). The mandate issued June 29, 2016. (Ex. W).

Petitioner filed his counseled federal habeas petition on December 28, 2016, raising three grounds for relief – two claims of trial court error and one claim of ineffective assistance of trial counsel. (Doc. 1). Respondent asserts that petitioner

is not entitled to habeas relief because he fails to meet 28 U.S.C. § 2254(d)'s demanding standard.  (Doc. 14).

## SECTION 2254 STANDARD OF REVIEW

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's factual determinations are presumed correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite that precedent.  Rather, the adjudication is "contrary" only if

either the reasoning or the result contradicts the relevant Supreme Court cases.  *See*

*Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does

not require citation to our cases – indeed, it does not even require awareness of our

cases, so long as neither the reasoning nor the result of the state-court decision

contradicts them.").  Where there is no Supreme Court precedent on point, the state

court's conclusion cannot be contrary to clearly established federal law.  *See Woods*,

135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being

absent from the courtroom for ten minutes during testimony concerning other

defendants: "Because none of our cases confront the specific question presented by

this case, the state court's decision could not be contrary to any holding from this

Court." (internal quotation marks and citation omitted)).  If the state court decision

is contrary to clearly established federal law, the federal habeas court must

independently consider the merits of the petitioner's claim.   *See Panetti v.*

*Quarterman*, 551 U.S. 930, 954 (2007).

    If the "contrary to" clause is not satisfied, the federal habeas court next

determines whether the state court "unreasonably applied" the governing legal

principles set forth in the Supreme Court's cases.  The federal court defers to the

state court's reasoning unless the state court's application of the legal principle(s)

was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)). The § 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v.*

*Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## DISCUSSION

| Ground One | "The state trial court erred by overruling Petitioner Cannella's objection and denying Petitioner Cannella's motion for a mistrial after a law enforcement officer impermissibly commented on Petitioner Cannella's exercise of his right to remain silent." (Doc. 1, p. 22). |
| --- | --- |

Petitioner claims his rights under the Fifth and Fourteenth Amendments were violated when the trial court overruled his objection and denied his motion for a

mistrial after a law enforcement witness impermissibly commented on his right to

remain silent.  (Doc. 1, pp. 22-25).  Petitioner's claim involves this exchange during

the prosecutor's questioning of Detective Stephen Barrow concerning petitioner's

post-Miranda voluntary statement to Barrow on February 16, 2007:

> Q [Prosecutor]:  What was the next question you asked him?
>
> A [Detective Barrow]:  I asked him if there was anything else about the crash that you can give me, anything about the area that is significant.
>
> Q:  Did Mr. Cannella ever tell you up to this point or through the end of this interview that he had been drinking to the extent that he had a 0.199 blood alcohol level?
>
> A:  No, ma'am.

(Ex. F, p. 361).  Defense counsel objected, arguing that Barrow's answer "[s]hift[ed]

the burden" and "[c]omment[ed] on the defendant's right to remain silent."  (*Id.*).

The trial court overruled the objection.  (*Id.*).  The prosecutor then asked:

> Q [Prosecutor]:  The defendant was giving you a voluntary statement. We already covered that.  Is that not correct –
>
> A [Detective Barrow]:  That is correct.
>
> Q:  – Detective?  And nowhere in this voluntary statement when you are asking him if there is any other significant things or important things we should know about this crash, does he ever tell you that he had consumed enough alcohol – or any alcohol; is that correct?
>
> A:  That is correct.

(*Id*., p. 362).  During cross-examination, defense counsel countered: "Did you ask the defendant if he had been drinking?"  (*Id*., p. 363).  Barrow responded, "No." (*Id*.).  Defense counsel later moved for a mistrial, again arguing that Barrow's testimony amounted to an improper comment on petitioner's constitutional right to remain silent. (*Id*., p. 365).  The prosecutor argued that she was merely asking about petitioner's voluntary statement to law enforcement.  (*Id*.).  The trial court denied the motion, explaining: "I don't think it was an inappropriate question or comment." (*Id*., p. 366).  Prior to closing arguments, the trial court advised counsel:

> THE COURT:  There was one other thing that I wanted to mention to you guys.  After the question at the end of the day yesterday about whether the defendant ever mentioned to the deputy whether he had consumed any alcohol, I went back and reviewed the case law on that. And I feel comfortable with my decision that those limited one or two questions about inculpatory evidence on the issue of alcohol and the defendant consuming alcohol as opposed to exculpatory statements and the fact that the defendant had waived his right to remain silent, I don't think that those one or two questions are fairly susceptible [to] being interpreted by the jury as a comment on the defendant's silence.

(Ex. H, pp. 511-12).  The trial court nonetheless directed the prosecutor not to comment on the matter during closing argument.  (Ex. H, p. 512).  No further comment was made.

The parties agree that petitioner presented this claim to the state courts at trial and on direct appeal; that the trial court denied relief on the merits; and that the First DCA summarily affirmed without explanation.  (Doc. 1, pp. 22-25; Doc. 14, p. 16).  The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption, described by the Supreme Court as follows: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning."  *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

This court need not decide whether admitting Barrow's testimony was constitutional error, because even assuming for the sake of argument that it was, petitioner still is not entitled to habeas relief because he fails to show that the error

resulted in actual prejudice – a showing necessary for federal habeas relief.  In *Davis*

*v. Ayala*, — U.S. —, 135 S. Ct. 2187 (2015), the Supreme Court explained:

> The test for whether a federal constitutional error was harmless depends on the procedural posture of the case. . . .
>
> In a collateral proceeding, the test is different [than on direct appeal].  For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Brecht*, 507 U.S., at 637, 113 S. Ct. 1710 (*quoting United States v. Lane*, 474 U.S. 438, 449, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'"  *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995).  There must be more than a "reasonable possibility" that the error was harmful.  *Brecht, supra*, at 637, 113 S. Ct. 1710 (internal quotation marks omitted).  The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error."  *Calderon v. Coleman*, 525 U.S. 141, 146, 119 S. Ct. 500, 142 L. Ed. 2d 521 (1998) (per curiam).

*Id*. at 2197-98 (*quoting Brecht v. Abrahamson*, 507 U.S. 619 (1993)); *see also Fry*

*v. Pliler*, 551 U.S. 112, 121-22 (2007) (holding that *Brecht* provides the appropriate

standard of review when constitutional error in a state-court trial is first recognized

by a federal court on habeas review).

Petitioner was charged with DUI manslaughter.  For the jury to find him guilty, it had to find he was driving his vehicle with a blood-alcohol level (BAL) over the legal limit and that, as a result of operating that vehicle, he caused or contributed to the cause of the victims' deaths.  *See* Fla. Stat. § 316.193(3).  At trial, petitioner did not dispute that he was the driver of the Chevy Silverado or that he consumed alcohol prior to the crash.  The principal questions before the jury were whether the State met its burden of proving beyond a reasonable doubt that petitioner's BAL was over .08 and that, as a result of operating the truck, petitioner caused, or contributed to the cause of, Cooper's and Johnson's deaths.  To prevail here, petitioner must show that, considering the record as a whole, the State's use of his post-Miranda silence "had substantial and injurious effect or influence in determining the jury's verdict."

Petitioner does not make the required showing of prejudice.  (Doc. 1).  Petitioner's reply argues that there was a substantial likelihood Barrow's testimony vitiated petitioner's right to a fair trial because the defense asserted that the driver of the victims' vehicle caused the accident and "the purpose of eliciting the improper testimony from detective Barrow was to establish that Petitioner Cannella was not forthcoming or had something to hide, thereby insinuating that he, in fact, caused

the accident." (Doc. 23, pp. 3-4). This argument is unpersuasive when Barrow's comments are viewed in the context of the entire trial.

For starters, the fact that petitioner consumed alcohol prior to the crash was not a disputed issue at trial. Second, Detective Barrow's two brief references to petitioner's silence came mid-trial and comprised less than two pages of the 600-page trial transcript. Third, immediately following Barrow's references to petitioner's failure to mention his alcohol consumption, defense counsel countered the State's suggestion that petitioner was trying to hide something, by forcing Barrow to admit that he never even asked petitioner about drinking on the night of the crash. Fourth, the jury heard from other witnesses (the EMT who treated petitioner at the scene and the nurse who treated petitioner at the hospital) that on the evening of the crash petitioner attempted to hide the odor of alcohol on his breath by diverting his mouth away from them during treatment and providing nonverbal responses to questions (i.e., nodding or shaking his head). In the context of the entire trial, Barrow's infrequent, inconsequential references to petitioner's silence on the issue of alcohol consumption were harmless under the *Brecht* standard.

Because petitioner has not shown that the alleged constitutional error had a "substantial and injurious effect" on the jury's decision to convict him, he is not entitled to federal habeas relief on Ground One.

<u>Ground Two</u>    <u>"The state trial court erred by denying Petitioner Cannella's motion for judgment of acquittal." (Doc. 1, p. 25).</u>

Petitioner claims the trial court erred in denying his motion for judgment of acquittal because the State's evidence failed to establish that he caused or contributed to the cause of Mr. Cooper's and Ms. Johnson's deaths. (Doc. 1, pp. 25-27). The parties agree that petitioner presented this claim to the state courts at trial and on direct appeal; that the trial court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (*Id*.; Doc. 14, pp. 21-27). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 100.

A.    Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 315 (1979). "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is

purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (*quoting Jackson*, at 324, n.16).

The federal standard finds evidence sufficient to support a conviction "if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson*, 566 U.S. at 654 (*quoting Jackson*, 443 U.S. at 319) (emphasis in original). By confining the court's review to that legal question, *Jackson*'s limited, deferential standard ensures that the court "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, — U.S. —, 136 S. Ct. 709, 715 (2016) (*quoting Jackson*, 443 U.S. at 319); *see also Johnson*, 566 U.S. at 655 (explaining that *Jackson*'s deferential standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" (*quoting Jackson*, 443 U.S. at 319)).

B.     Section 2254 Review of State Court's Decision

Because the First DCA's summary affirmance was unexplained, this court looks through the unexplained decision to the state trial court's rationale. *See*

*Wilson*, 138 S. Ct. at 1192.  The trial court denied petitioner's motion for judgment

of acquittal for these reasons:

> THE COURT:  Okay.  Looking at the evidence in the light most
> favorable to the State, I am going to find that the State has presented a
> prima facie case that Mr. Cannella drove or was in actual physical
> control of a vehicle, that while driving or in actual physical control of
> the vehicle, Patrick Cannella had a blood alcohol level of .08 grams or
> more of alcohol per 100 millimeters of blood and that he was potentially
> under the influence of alcoholic beverages to the extent that his normal
> faculties were impaired and that as a result of operating the vehicle, he
> contributes to the cause of death of Jarrod Cooper and Ms. Johnson.  So
> I am going to deny your motion for JOA.

(Ex. G, p. 450).

As mentioned above, manslaughter by driving under the influence has three

elements: (1) the defendant drove or was in actual physical control of a vehicle, (2)

while driving or in actual physical control of that vehicle, the defendant had a blood

alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood; and (3)

as a result of operating the vehicle, the defendant caused or contributed to the cause

of the death of the victim.  *See* Fla. Stat. § 316.193(3)(c); *see also* Doc. 14, Ex. A,

pp. 93-94 (jury instructions).  Petitioner's claim involves the third element.  The

State presented the following evidence on that issue.

Deputy Barrow testified that petitioner admitted, during his post-Miranda

interview, that the speed limit on Williams Road was 45 miles per hour and that he

was going between 45 and 50 miles per hour.  (Ex. F, p. 349-50).  Petitioner said he

applied his brakes but hit the car almost instantaneously.  (*Id*., p. 353).

Joshua Harrison from the Florida Department of Law Enforcement testified

that petitioner's blood alcohol level was 0.199 and 0.196, and that the legal limit is

.08.  (Ex. F, pp. 248-49).  Harrison explained, generally, that alcohol is a central

nervous system depressant that can slow down a person's "ability to react to things",

"decrease . . . your ability to see things accurately", and cause "an impaired ability

to perform what we call divided attention tasks."  (*Id*., p. 250).

Tracie Campbell, the State's accident reconstruction expert, testified that at

the point of impact, petitioner was driving 51 miles per hour and the Kia was

travelling at 38 miles per hour.  (Ex. G, p. 426).  Campbell testified that if petitioner's

truck had been traveling the posted speed limit, the crash could have been avoided

or, at a minimum, had a different impact on the Kia with different crush damage.

(Ex. G, pp. 426-27).  Specifically:

> [Ms. Campbell]:  . . . The crush damage would have been primarily to
> the left rear quarter area of the Kia.  And the Silverado [truck] would
> have experienced most of its damage on the left front bumper area as
> opposed to across the entire front end of the vehicle.
>
> [Prosecutor]:  The victims wouldn't have had the severe impact to their
> torso and the areas that you showed in the diagram earlier in the
> representation, is that correct?

> [Ms. Campbell]:  Yes.  It is my opinion that the forces that would have
> been acting on those bodies in all likelihood would not have caused the
> same kind of injuries into the upper torsos.

(Ex. G, p. 427).  Ms. Campbell agreed that the Kia's failure to stop at the stop sign contributed to the accident but testified that petitioner's going 51 miles per hour (6 mph over the limit) also contributed to it.  (Ex. G, p. 431).

Fairminded jurists can concur in the state court's determination that viewing the trial evidence in the light most favorable to the prosecution, a rational juror could infer that petitioner's operation of his truck contributed to the cause of Mr. Cooper's and Ms. Johnson's deaths.  *See Ayala*, 135 S. Ct. at 2199 (confirming that "a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness"; and that a habeas petitioner "must show that the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (internal quotation marks and citations omitted)); *Jackson*, 443 U.S. at 319.  Although the evidence in the record does arguably support the defense theory that petitioner's operation of the truck did not contribute to the cause of the victims' deaths, the mere possibility of a different conclusion does not render the State's evidence legally insufficient or the state court's determination of the issue

unreasonable.  *See Burt v. Titlow*, 571 U.S. 12, 18 (2013) (*citing Wood v. Allen*, 558 U.S. 290, 301 (2010)).  Petitioner has not met § 2254(d)'s demanding standard and is not entitled to habeas relief.

| Ground Three | "Defense counsel rendered ineffective assistance of counsel by failing to retain and present at trial an independent toxicologist/expert to challenge the State's theory regarding Petitioner Cannella's blood-alcohol level at the time of the accident."  (Doc. 1, p. 27). |
|---|---|

Petitioner last claims that his retained defense counsel, Dennis Boothe, rendered constitutionally ineffective assistance when he failed to retain and present at trial a toxicologist to establish that petitioner was not intoxicated at the time of the accident.  (Doc. 1, p. 27).  Petitioner claims that had counsel retained an expert such as Dr. Stephen Curry, he could have presented testimony that petitioner's blood-alcohol level was below .08 at the time of the accident.  (*Id.*, pp. 28-29).  Petitioner argues that there is a reasonable probability the result of his trial would have been different had someone like Curry testified.  (*Id.*, pp. 30-31).

The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation.  (Doc. 1, pp. 27-36; Doc. 14, pp. 27-28).  The First DCA's summary affirmance is an "adjudication on

the merits" entitled to deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 100.

> A.      Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set out a two-pronged standard for ineffective assistance of counsel claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  *See Strickland*, 466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (*quoting Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.  Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

*Strickland*, 466 U.S. at 690.    The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Titlow*, 571 U.S. at 22-23; *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 571 U.S. at 23 (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694.    A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.*  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts when evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698.  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371

(2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.    Section 2254 Review of State Court's Decision

Because the First DCA's summary affirmance was unexplained, this court looks through the unexplained decision to the state postconviction trial court's rationale. *See Wilson*, 138 S. Ct. at 1192. The postconviction trial court held an evidentiary hearing, (Ex. P, pp. 283-400 through Ex. Q, pp. 401-549 (evidentiary hearing transcript)), and denied relief for these reasons:

> The Defendant argues that his trial counsel rendered ineffective assistance by failing to retain an independent toxicologist/expert to review the [S]tate's theory regarding his blood alcohol level at the time of the accident and for not presenting such expert's testimony at trial to contradict the State's evidence on this issue. I have considered the evidence presented at the hearing on the motion and reviewed the court

file, including the transcript of the trial, and for the reasons set forth below deny the motion.

Defense counsel, Dennis Boothe, did retain a toxicologist expert who testified at trial. Dr. Marland Delaney was retained by trial counsel as an expert toxicologist. He testified at the hearing that he and Boothe discussed a possible strategy of questioning the extrapolation of the BAL at the time the blood was drawn three hours after the accident. Delaney suggested that the BAL was likely to be higher at the time of the accident and that, in his opinion, that was not a winning strategy. Instead, he gave testimony at trial that in his opinion, the Defendant's reaction time at the time of the accident was within the normal range, thus suggesting that he was not under the influence of alcohol to the extent that his normal faculties were impaired. By inference, this opinion would also bring into question whether his blood alcohol level was as high at the time of the accident. Delaney advised Boothe that the only viable defense was that the accident could not have been avoided, and that the Defendant did not contribute to causing the accident.

The Defendant takes the position now that his attorney should have gone to a different expert, one who could have effectively challenged the State's evidence regarding his blood alcohol level. The witnesses called by the defense at the hearing, however, were unconvincing. Their opinions were speculative and based on incomplete data and their interpretation of the record evidence self serving.

For example, Mr. Curry opined that the Defendant must not have been under the influence of alcohol at the time because no one smelled the odor of alcohol on his breath. However, there was testimony at trial that when the Defendant was asked to take a deep breath, which sometimes will reveal the odor of alcohol incidentally, he would turn his head, suggesting an attempt to avoid such detection. There is no comparison of the Defendant's observable behavior at the time of the accident versus the time the blood was drawn. Curry was unable to

give any opinion as to what the blood alcohol level would have been at the time of the crash.

The experts at trial and at the hearing agreed that an accurate extrapolation of the BAL at the time of the blood draw to the time of the crash (2-3 hours earlier) would depend on many factors, including body weight, amount of alcoholic beverage consumed over what period of time, and how recently it was consumed before the crash. None of those factors were considered by the experts who testified before me. The Defendant did not testify at trial, or at the hearing. In statements he made to emergency medical personnel at the scene and at the hospital, he denied any use of alcohol or illicit drugs. Mr. Curry pointed to the evidence that the Defendant's reaction time was normal according to the black box data, but that is exactly what the defense attorney's expert testified to at trial and gave as a basis for his opinion that, whether the Defendant had consumed alcohol or not, his normal faculties were not impaired at the time of the crash.

Lawrence Masters also presented as an expert in toxicology at the hearing. He complained about the lack of documentation of the blood care and the possibility of false positives and chain of custody issues. At trial, however, the defense attorney did object to chain of custody to challenge the reliability of the evidence. However, the trial judge correctly ruled that absent some showing of improper taint or corruption of the evidence, it was admissible. This witness could not testify as to whether there was, in fact, some factual basis to conclude that the blood test results were inaccurate.

Masters also relied upon no observations of impairment at the scene, which basis I've already discussed. He conceded that determination of the level of alcohol in the defendant's blood could only be reliably determined by considering several factors, many of which are or were known only to the Defendant, as noted above. Tellingly, Masters did not ask the Defendant any questions relative to those factors, nor any others that would be important in extrapolation, nor consider such factors in reaching his conclusion. On cross

examination, this witness was vague and uncertain about exactly what information he had reviewed, what he had asked for and had received, and what he found significant.  The factual basis for his opinion was severely lacking.

Mr. Kessler, an attorney with extensive DUI experience, suggested that Mr. Boothe should have gotten the blood work packet from FDLE and had it analyzed.  But, he also conceded that he had no idea what would have been discovered, specifically if anything favorable to the defense could have been utilized.  Joshua Harrison, a forensic toxicologist at FDLE at the time the case was tried, testified that no expert had requested anything from his file in order to evaluate it and to present evidence at this hearing.

If the defense had tried to make an issue of possible protocol issues or other factors relative to the care and custody of the blood via an expert, the State would have known it was an issue and could have been prepared to meet such a challenge.  It is purely speculative to say now that the failure by Mr. Boothe to do any of this would have made any difference at all at trial.

Common sense also does not support the Defendant in his argument.  Most jurors, given basic knowledge of absorption and elimination of alcohol, would most likely presume that, unless the Defendant chugged down a substantial quantity of alcohol immediately before he got into this truck and crashed into the victim's car, his blood alcohol level would have been higher at the time of the crash than it was hours later when his blood was drawn.

It is understandable that, consistent with the advice given by the expert he had retained on toxicology, the Defendant's trial attorney, while not abandoning the argument that the State had not proved an unlawful blood alcohol level at the time of the crash, made a strategic decision to focus elsewhere.  Specifically, he chose to argue that the Defendant acted normally to the car darting in front of him, that his reaction time was normal, and that there was nothing that he did that

caused the death of the victims.  For the reasons set forth above, I cannot
determine from the evidence presented to me and the review of the
record that Defendant's trial attorney was ineffective or that even if he
was ineffective, that the required prejudice to the Defendant has been
shown.

(Ex. S, pp. 550-54).   Attorney Boothe did not testify at the hearing as he was

deceased.  (Ex. P, p. 285).

Applying *Wilson*'s "look-through" presumption, the First DCA's rejection of

petitioner's claim was consistent with *Strickland* and was based on a reasonable

determination of the facts.  The state court's factual findings are amply supported by

the record and are presumed correct.  Petitioner takes issue with the state court's

credibility determinations – its acceptance of Dr. Delaney's postconviction

evidentiary hearing testimony as credible and its determination that petitioner's

witnesses were not credible – but this court must defer to the state court.  *Baldwin v.*

*Johnson*, 152 F.3d 1304, 1317 (11th Cir. 1998); *Consalvo v. Sec'y for Dep't of Corr.*,

664 F.3d 842, 845 (11th Cir. 2011).  The Eleventh Circuit explained in *Consalvo*:

> Determining the credibility of witnesses is the province and function of
> the state courts, not a federal court engaging in habeas review.  Federal
> habeas courts have "no license to redetermine credibility of witnesses
> whose demeanor has been observed by the state trial court, but not by
> them."  *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74
> L. Ed. 2d 646 (1983).  We consider questions about the credibility and
> demeanor of a witness to be questions of fact.  *See Freund v.*
> *Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc).  And the

> AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

*Id*. at 845.   Petitioner's attempt to impeach Dr. Delaney's credibility with an arguably inconsistent statement from a 6-year-old pretrial deposition – impeachment evidence that the state court considered and obviously found insubstantial – does not convince this court that the state court's credibility determinations should be rejected.

Based on the state court's factual determinations and the evidence in the trial and postconviction records, the state court reasonably concluded that counsel's decision not to shop for an additional (or alternative) expert to attack the State's BAL evidence was a reasonable strategic decision.  Prior to trial, Attorney Boothe retained Dr. Marland Delaney to assist the defense.   Delaney was a board-certified toxicologist since 1990.  (Ex. Q, p. 444).  Boothe asked Delaney to evaluate the very defense petitioner now proposes (that petitioner's BAL was below .08), as well as other possible defenses.  Delaney evaluated the issue, but determined there was no scientifically or professionally credible way to show that petitioner was not intoxicated at the time of the crash.   Delaney explained at the postconviction evidentiary hearing:

> I looked at all the information and I looked at the blood alcohol
> concentrations. I looked at the police reports for times and when the
> blood was drawn. And then we had a discussion about whether I could
> do anything with this. And I told [Attorney Boothe] that I could not do
> a retrograde extrapolation that would be helpful to his client.

(Ex. Q, p. 421). When asked whether he prepared a full retrograde extrapolation for

Boothe, Delaney explained: "I did some basic back-of-the-envelope calculation for

this. I do . . . this so much so it was pretty easy to do." (*Id*. p. 422). Attorney Boothe

asked Delaney what he thought petitioner's BAL at the time of the accident would

be if Delaney performed a formal analysis and report. Delaney told Boothe the BAL

"was going to be a good deal higher at the time of the accident." (*Id*.). According

to Delaney:

> I looked at the blood alcohol and looked at the time difference in
> between the two and I knew that it was either going to be higher than
> [sic] at the time of the accident than it was when he measured it or . . .
> it could be, it could be about the same. At no time would it be below
> .08. So I told him, I just can't help you here.

(Ex. Q, p. 424; *see also id*., p. 449 ("There was no way it was going to be below

.08.")). When asked if he would have attacked the BAL at the time of the crash if

he thought there was a viable way to do so, Delaney responded:

> That's a question I've asked myself a couple times. If I could
> convince myself scientifically and assure myself within the rules that
> I've set for myself and my practice that I was telling the truth, then, yes,
> I would have attacked it mercilessly. But I couldn't do that.

(*Id*., p. 450).

Delaney investigated other possible defenses and determined from data retrieved from the Silverado's "black box", that petitioner's reaction time at the moment of the accident was within the normal range (possibly due to high alcohol tolerance) which, while not a basis to challenge the BAL, did support a defense theory that the accident could not have been avoided and petitioner did not contribute to it. (Ex. Q, pp. 420-30). Delaney discussed his reasoning and conclusions with Boothe, and Boothe decided to pursue that defense strategy. To that end, Boothe presented two experts at trial. Delaney testified that he reviewed the autopsy toxicology report for Jarrod Cooper and the report established Cooper had the THC metabolite in his urine, indicating he smoked marijuana sometime within 3 days of the accident; and that petitioner's reaction time from perceiving the Kia car to hitting his brakes was one second, which was within normal range. Brian Barton, an expert accident reconstructionist, testified that at the time of the accident, petitioner was traveling 42-44 miles per hour (not 51); that neither vehicle attempted "hard braking" prior to impact, that prior to the accident, the Kia failed to stop at the stop sign; that the accident was caused by the Kia's failure to stop at the stop sign; and that petitioner could not have avoided the collision. Attorney Boothe argued to the

jury that regardless of whether petitioner's BAL was above the legal limit, the State failed to prove beyond a reasonable doubt that petitioner caused or contributed to the cause of Mr. Cooper's and Ms. Johnson's deaths.

In light of the evidence before the state postconviction court, it was entirely consistent with *Strickland* to conclude that counsel's performance was within the wide range of reasonable, professional assistance. *Strickland* warned that "[i]t is all too tempting . . . and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689. That is why *Strickland* "requires that every effort be made to eliminate the distorting effects of hindsight." *Id.*; *see also Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) ("The widespread use of the tactic of attacking trial counsel by showing what "might have been" proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight."); *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992) ("Most important, we must avoid second-guessing counsel's performance. As is often said, 'Nothing is so easy as to be wise after the event.'" (citation omitted.)).

Fairminded jurists could agree that defense counsel reasonably investigated the defense petitioner now proposes, reasonably relied on a highly qualified expert's

opinion to conclude it was not a viable defense, and reasonably developed an alternative defense strategy that was supported by expert testimony a jury could find credible.

The state court's evaluation of the prejudice prong was also reasonable. The speculative and unsupported testimony from petitioner's witnesses at the postconviction evidentiary hearing is insufficient to establish a reasonable probability that the result of petitioner's trial would have been different had Attorney Boothe shopped for another toxicology expert.

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on Ground Three.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327). The petitioner here cannot make the requisite showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Patrick William Cannella*, Leon County Circuit Court Case No. 2007-CF-883, be DENIED.

2.   That the clerk be directed to close the file.

3.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 12th day of October, 2018.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.